IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


FIRST AMERICAN TITLE INSURANCE CO.,

           Plaintiff,

v.                                    CIVIL ACTION NO. 1:16cv219
                                              (Judge Keeley)

BOWLES RICE, LLP,

           Defendant.

MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

       Now pending are objections filed by the defendant, Bowles

Rice, LLP ("Bowles Rice"), to the denial of two motions to compel

by the Honorable Michael J. Aloi, United States Magistrate Judge.

For the reasons stated on the record during the November 20, 2017,

status conference, as well as those that follow, the Court

**OVERRULES** Bowles Rice's objections (Dkt. No. 103).

## I. BACKGROUND

**A.   Factual Background**[1]

       This case is the most recent in a litany of litigation flowing

from the ill-fated construction of a $2 billion, 695-megawatt

supercritical coal-fired power plant by Longview Power, LLC

("Longview"), in Maidsville, West Virginia. Longview financed

construction of the plant, in part, by borrowing approximately $1.1

billion. The financing was secured by a Fee and Leasehold Credit

---

       [1] Because the basic underpinning of this case is not in
dispute, unless otherwise noted, the Court takes its recitation of
the foundational facts from the parties' pleadings and briefing.

## MEMORANDUM OPINION AND ORDER
### OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

Line Deed of Trust, Security Agreement, and Assignment of Leases and Rents and Fixture Filing ("Deed of Trust"), in favor of Union Bank of California, N.A. ("Union Bank"), which was executed and recorded in Monongalia County, West Virginia, on February 28, 2007.

To cover the Deed of Trust's priority, Union Bank obtained a $775 million lender's policy of title insurance from the plaintiff, First American Title Insurance Company ("First American"). The policy has an effective date of March 9, 2007, and includes a mechanic's lien endorsement. Pursuant to its agency agreement with First American, Bowles Rice actually underwrote, performed title searches, and issued the title insurance policy on First American's behalf.[2] First American reinsured portions of its liability under the policy through agreements with Old Republic Title Insurance Company ("Old Republic") and Stewart Title Insurance Company ("Stewart").

As subsequent events make clear, few parties involved with construction of the power plant escaped the project unscathed. First, Longview became entangled in various disputes with its contractors during the course of construction, and the contractors

---

[2] At this time, the parties dispute whether Bowles Rice was acting pursuant to a 1994 agency agreement regarding policies issued out of its office in Charleston, West Virginia, or a 2006 agency agreement regarding policies issued out of its office in Morgantown, West Virginia.

filed mechanic's lien claims in excess of $335 million in February 2012. Because the mechanic's liens claimed priority over its Deed of Trust, Union Bank filed a claim with First American in April 2013. Longview subsequently filed for bankruptcy protection in the District of Delaware in August 2013.

First American proceeded to litigate the issue of liability under its insurance policy on several fronts. In May 2014, it sought declaratory relief in California state court regarding its obligations to Union Bank. Thereafter, Longview filed an adversary proceeding against First American in the bankruptcy proceeding in the District of Delaware, seeking a determination regarding coverage under the insurance policy. In June 2014, the Delaware bankruptcy court approved the assignment of proceeds under the policy from Union Bank to Longview, and it stayed First American's case in California. In September 2014, First American commenced its own adversary proceeding in the District of Delaware, challenging the priority of the mechanic's liens over the Deed of Trust.

Ultimately, in December 2014, First American resolved its liability in these matters by contributing $41 million as part of a global settlement in the Delaware bankruptcy court. First American recovered a portion of this loss through its reinsurance policies, but only after Old Republic and Stewart contested their

MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

liability and forced First American to litigate the claims. In turn, First American filed this lawsuit for breach of contract against Bowles Rice on November 16, 2016.

More particularly, First American seeks to recover its loss based on Bowles Rice's alleged breaches of their agency agreements. First, First American contends that Bowles Rice knew construction had commenced on the power plant prior to issuing the title insurance policy – thus giving rise to the possibility of the filing of mechanic's liens that would hold priority over the Deed of Trust – but breached its duty to inform First American of such a critical fact. Second, First American claims that Bowles Rice breached its duty to indemnify it for losses associated with Union Bank's claim under the title insurance policy.

**B.    Procedural Background**

The parties have been engaged in discovery since the Court conducted a scheduling conference in February 2017. In August 2017, Bowles Rice filed two motions to compel, which the Court referred to Magistrate Judge Aloi (Dkt. Nos. 51; 52). On October 23, 2017, Magistrate Judge Aloi entered a written order denying portions of Bowles Rice's motions (Dkt. No. 89).[3]

---

[3] Many issues that were the subject of Bowles Rice's motions actually were resolved during proceedings before the magistrate judge. His written order dealt exclusively with remaining matters

## MEMORANDUM OPINION AND ORDER
## OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

### 1.  Bowles Rice's Motions

In its first set of interrogatories, particularly Interrogatory No. 4, Bowles Rice sought the following:

> Identify by name, residence and business address and residence and business telephone number, each and every agent, representative and/or employee of Plaintiff who participated in the decision regarding the level at which any reserve should be established as to any claim herein described and state specifically the reasons and rational relied on in support of the decision to set a reserve at the level where it was first established and describe in detail any and all documents which might exist which would indicate the amount of the reserve established; when it was established; who established the reserve; the reasons and rationale relied on in support of the establishment of the reserve, whether such reserve was ever changed, and if so, how and why it was changed.

(Dkt. No. 51-1 at 7). First American responded as follows:

> First American objects to this interrogatory on grounds it seeks information that is not relevant, the request is not reasonably calculated to lead to the discovery of admissible evidence, and the request is not proportional to the needs of the case. Further objecting, First American states that the request seeks information protected by the attorney client privilege and the attorney work product doctrine.

Id.

Bowles Rice moved to compel this information, arguing that 1) reserve information "is relevant to determining the reasonableness of any settlements that [First American] now seeks to recover from Bowles Rice"; 2) without a privilege log, Bowles

---

that are now the subject of Bowles Rice's objections.

## MEMORANDUM OPINION AND ORDER
### OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

Rice cannot not adequately assess First American's work-product claims; and 3) the identity of individuals involved with reserves "is clearly discoverable" (Dkt. No. 51 at 8-10).

At the same time, in Requests for Production Nos. 4, 6, 8, 10, 12, 14, and 16, Bowles Rice sought "litigation related documents which would not have been publicly filed" (Dkt. No. 52 at 10). It specifically sought "all documents reflecting all communications, emails, letters, etc., between Plaintiff and any attorney or representative retained by it or acting on its behalf related to" the following actions, many of which are discussed above:

- _Jarrett F. Jamison, III, et al. v. Longview Power, LLC, et al._, Civil Action No. 07-CV-20 (N.D.W.Va.);

- _Jarrett F. Jamison, III, et al. v. Longview Power, LLC, et al._, Civil Action No. 07-CV-41 (N.D.W.Va.);

- _Old Republic National Title Insurance Company v. First American Insurance Company_, Civil Action No. 8:15-cv-126-T-30EAJ (M.D. Fla.);

- _In re Longview Power, LLC, et al._, Adversary Proceeding No. 14-AP-50369 (BLS) (Bankr. D. Del.);

- _First American Title Insurance Company v. Union Bank, N.A. fka Union Bank of California, N.A., et al._, Civil Action No. 8:14-CV-00953 (Super. Ct.); and

- _Kvaerner North American Construction Inc.'s action against Longview Power, LLC_, Civil Action No. 12-C-521, in the Circuit Court of Monongalia County, West Virginia.

## MEMORANDUM OPINION AND ORDER
### OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

In response, First American "object[ed] that [each] request seeks documents and information that are protected from production by the attorney client privilege and attorney work product doctrine." According to Bowles Rice, although this information is relevant to whether the settlements were in good faith, First American did not provide a privilege log. Bowles Rice moved to compel First American to provide a privilege log so that Bowles Rice could evaluate the claims of privilege (Dkt. No. 52 at 13-14).

At Magistrate Judge Aloi's direction, Bowles Rice filed a supplemental brief on October 6, 2017, to address its argument that First American had impliedly waived the attorney-client privilege covering the enumerated litigation by filing this lawsuit (Dkt. No. 73). First American argues, on the other hand, that it must only prove the "objective reasonableness" of its settlement to succeed on its indemnification claim, making the privileged documents irrelevant (Dkt. No. 81 at 6).

### 2.    The Magistrate Judge's Decision

In rejecting Bowles Rice's arguments and denying its motions to compel, Magistrate Judge Aloi reasoned that First American had not waived the attorney-client privilege regarding underlying settlements because it had not placed attorney-client communications in issue by relying on them (Dkt. No. 89 at 9-11).

## MEMORANDUM OPINION AND ORDER
### OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

Second, Magistrate Judge Aloi denied Bowles Rice's request to compel production of the mental impressions behind First American's reserves, given that reserves themselves are irrelevant to the reasonableness of the settlement. <u>Id.</u> at 12. Finally, he did not require First American to produce a privilege log for communications taking place after July 2014. <u>Id.</u>

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(A), the Court may designate a magistrate judge to determine non-dispositive pretrial matters, but the Court "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a) provides the framework for such reconsideration. When the Court refers a non-dispositive motion, "the magistrate judge must . . . , when appropriate, issue a written order stating the decision." The parties have an opportunity to object within 14 days of being served with the order, and "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

In this case, Bowles Rice identifies three specific objections to Magistrate Judge Aloi's rulings on its motions to compel. The questions presented for the Court are as follows:

**MEMORANDUM OPINION AND ORDER**
**OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]**

- Whether the decision is contrary to law because it did not require First American to provide privilege logs for allegedly privileged documents produced after July 29, 2014;

- Whether the decision that reserve information is irrelevant is clearly erroneous or contrary to law given the particularized facts of this case; and

- Whether the decision that First American did not waive its attorney-client privilege regarding the underlying lawsuits is clearly erroneous or contrary to law.

### III. LEGAL FRAMEWORK

Although they rely on the same authority, First American and Bowles Rice dispute a foundational issue: whether, under the burden of proof applicable to First American's request for indemnification, First American must prove that it acted in subjective "good faith," or must only demonstrate that the underlying settlements were objectively reasonable. After reviewing relevant West Virginia precedent, the Court is persuaded that First American has the better argument.

West Virginia recognizes both express and implied indemnification. Express indemnity is based on a written agreement and "can provide the person having the benefit of the agreement, the indemnitee, indemnification even though the indemnitee is at

MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

fault." Syl. Pt. 1, <u>Valloric v. Dravo Corp.</u>, 357 S.E.2d 207 (W. Va. 1987). Implied indemnity, on the other hand, arises out of a relationship between the parties. <u>Id.</u>

"Where a party having a duty to indemnify has been notified or been made a party to the underlying proceedings and given an opportunity to participate in its settlement negotiations . . . the indemnitee should not be required to prove" that it was actually liable "to recover the amount paid in the settlement." Rather, "[u]nder a potential liability standard, the indemnitee must in his indemnity suit show that the original claim is covered by the indemnity agreement. Then he must demonstrate that he was exposed to liability which could reasonably be expected to lead to an adverse judgment. Finally, he must prove that the amount of the settlement was reasonable." <u>Id.</u>, 357 S.E.2d 207, Syl. Pt. 4.

This test obtains regardless of whether the duty is express or implied. Moreover, the standard does not involve inquiry into the subjective belief of a settling indemnitee. Rather, the Supreme Court of Appeals has identified two objective factors for assessing reasonableness: "the amount paid in settlement of the claim in light of the risk of exposure." <u>Id.</u> at 214.

Bowles Rice argues that First American must show that it acted in "good faith" in order to recover, claiming that the Supreme

## MEMORANDUM OPINION AND ORDER
### OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

Court of Appeals "implicitly recognized that good faith is required to support an indemnity claim for an underlying settled claim" (Dkt. No. 82 at 4-5). This simply is not correct. In <u>Valloric</u>, West Virginia's highest court merely noted that requiring an indemnitee to prove that it was "actually liable," rather than "potentially liable," would discourage settlements "on a good faith basis." <u>Valloric</u>, 357 S.E.2d at 212. Nowhere does the court require indemnitees to prove subjective good faith in addition to or as a component of reasonableness. Rather, it appears to treat acts that are "reasonable and undertaken in good faith" as one and the same. See <u>id.</u>; <u>accord</u> <u>Grace Village Health Care Facilities, Inc. v. Lancaster Pollard & Co.</u>, No. 3:11cv295, 2013 WL 4012662 (N.D. Ind. Aug. 6, 2013); <u>Interspan Distribution Corp. v. Liberty Ins. Underwriters, Inc.</u>, 2009 WL 2605314 (S.D. Tex. Aug. 21, 2009) (recognizing an objective standard).

## IV. DISCUSSION

Because West Virginia law imposes an objective standard on parties seeking indemnification, the Court concludes that reserve information regarding Union Bank's claim is irrelevant, and that First American did not impliedly waive its attorney-client privilege by filing this lawsuit. Moreover, First American need not

MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

provide   a   privilege   log   regarding   those   attorney-client
communications.

## A.    Reserves Information Is Irrelevant.

Bowles Rice argues that reserve information is relevant to the
reasonableness of First American's decision to settle its liability
in the underlying litigation for $41 million. More particularly,
Bowles Rice contends that information related to First American's
quickly   changing   reserve   for   the   underlying   claim   may   help
establish the unreasonableness of its settlement (Dkt. No. 103 at
9-11). Although not binding on this Court's application of the
Rules of Evidence, there is persuasive West Virginia authority to
the contrary regarding the relevance of reserve information.

"[R]eserves   are   value   approximations   made   by   an   insurance
company regarding what will be sufficient 'to pay all obligations
for   which   the   insurer   may   be   responsible   under   the   policy   with
respect to a certain claim." State ex rel. Erie Ins. Prop. & Cas.
Co. v. Mazzone, 625 S.E.2d 355, 358-59 (W. Va. 2005). When deciding
whether reserve information is relevant in any particular case, it
is critical to consider the method by which an insurance company
sets reserves (i.e. individual vs. aggregate), the nature of the
underlying litigation, and the purpose for which the information is
sought. "In other words, it is widely recognized that relevancy of

reserve information turns on the unique factors presented in each case." Id. at 360. For instance, in a third-party bad faith case, information related to an individual reserve may be relevant to whether an insurance company intentionally undervalued the plaintiff's claim with regard to its settlement offers. See Nicholas v. Bituminous Cas. Corp., 235 F.R.D. 325, 330 (N.D.W.Va. 2006) (noting that, "[a]lthough reserve information generally has been held to be irrelevant in cases involving coverage issues, Erie recognized that a few courts had determined that such information is relevant in bad faith cases").

Here, even assuming that First American set its reserve for the underlying claim such that its "reasons and rationale" are probative of good or bad faith, those subjective beliefs are not relevant given "the unique factors presented" in this case. Erie, 625 S.E.2d at 360. As already discussed, under the potential liability standard upon which First American relies, an indemnitee need only prove that it reasonably settled a claim for which it may have been liable. Valloric, 357 S.E.2d 207, Syl. Pt. 4. Whether First American's settlement was reasonable will be determined based on the amount First American paid in light of the possible exposure it faced. Id. at 214. Because this standard is objective, Magistrate Judge Aloi's conclusion that subjective information

**MEMORANDUM OPINION AND ORDER**
**OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]**

regarding First American's reserve is irrelevant – and thus not discoverable – was neither clearly erroneous nor contrary to law.

**B.** **First American Did Not Impliedly Waive the Attorney-Client Privilege.**

Bowles Rice also contends Magistrate Judge Aloi incorrectly concluded that First American did not impliedly waive its attorney-client privilege regarding underlying litigation (Dkt. No. 103 at 11-13).

In this diversity action, attorney-client privilege is governed by West Virginia law, Fed. R. Evid. 501, which requires that "(1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as legal advisor; [and] (3) the communication between the attorney and client must be intended to be confidential." Smith v. Scottsdale Ins. Co., 621 F. App'x 743, 745 (4th Cir. 2015) (unpublished decision) (alteration in original) (quoting State ex rel. Med. Assurance of W. Va., Inc. v. Recht, 583 S.E.2d 80, 84 (W. Va. 2003)). Even if privileged matters are relevant and helpful to a litigant's case, they are not discoverable. Id.

Nonetheless, "[a] party may waive the attorney-client privilege by asserting claims or defenses that put his or her attorney's advice in issue." Syl. Pt. 6, State ex rel. Brison v.

14

MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

Kaufman, 584 S.E.2d 480 (W. Va. 2003) (quoting Syl. Pt. 8, State ex
rel. United States Fid. & Guaranty Co. v. Canady, 460 S.E.2d 677
(1995)). "[A]n attorney's legal advice only 'becomes an issue where
a client takes affirmative action to assert a [claim or] defense
and attempts to prove that [claim or] defense by disclosing or
describing an attorney's communication.'" State ex rel. Marshall
Cty. Comm'n v. Carter, 689 S.E.2d 796, 805 (W. Va. 2010) (quoting
Canady, 460 S.E.2d at 688 n.16). Critically, "advice is not in
issue merely because it is relevant, and does not come in issue
merely because it may have some affect [sic] on a client's state of
mind." Smith, 621 F. App'x at 746 (quoting Canady, 460 S.E.2d at
688 n.16).

Bowles Rice relies primarily on two cases to argue that First
American placed its attorneys' advice "in issue" by filing this
indemnification lawsuit: Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash.
1975), and In re County of Erie, 546 F.3d 222 (2d Cir. 2008). The
approaches outlined in these cases are valuable as persuasive
authority regarding how West Virginia would determine whether First
American placed its attorney advice "in issue" in this case.

In Hearn, the defendants confined the plaintiff in a mental
health unit without a hearing or other review. When the plaintiff
sued them for violations of his constitutional rights, the

defendants asserted that they had acted in good faith and were entitled to immunity. 68 F.R.D. at 578. To counter this defense, the plaintiff sought discovery of legal advice rendered to the defendants. In analyzing whether the defendants had impliedly waived the attorney-client privilege, the district court noted that privilege exceptions usually involve "the party asserting privilege plac[ing] information protected by it in issue through some affirmative act for his own benefit." In order to avoid manifest unfairness, the court concluded that privilege is impliedly waived when "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." Id. at 581.

Application of the test articulated in Hearn has varied in the context of indemnification actions. Compare 1st Sec. Bank of Washington v. Eriksen, 2007 WL 188881, at *3 (W.D. Wash. 2007) (finding that attorney-client privilege is not waived under Hearn even though objective reasonableness of a settlement may be at issue), with GAB Bus. Servs., Inc. v. Syndicate 627, 809 F.2d 755, 762 & n.11 (11th Cir. 1987) (reasoning that an indemnitee waived

MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

its attorney-client privilege by placing the reasonableness of its settlement at the "very heart" of the litigation, thus "requir[ing] testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct"), criticized in PETCO Animal Supplies Stores, Inc. v. Ins. Co. of North America, 2011 WL 2490298, at *18 (D. Minn. June 10, 2011).

But to the extent that Hearn suggests privileged information is at issue merely because it is relevant to a claim, this aspect of the test is difficult to square with West Virginia law.[4] As discussed, although privilege can be waived in West Virginia when a party's claim or defense puts its attorney's advice at issue, advice does not become "in issue" unless a client takes affirmative action to rely on his or her attorney's advice in subsequent litigation. Indeed, the Supreme Court of Appeals has noted that advice does not become "in issue" merely because it is relevant or affected the client's state of mind. Smith, 621 F. App'x at 746

---

[4] As Bowles Rice points out, a magistrate judge in this district recently cited Hearn with regard to implied waiver. See Smith v. Scottsdale Ins. Co., 40 F. Supp. 3d 704, 724 (N.D.W.Va. 2014). But that same decision also cited Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., which was extremely critical of the test articulated in Hearn. 32 F.3d 851, 863 (3d Cir. 1994) ("These decisions are of dubious validity. While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed.").

MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]

(quoting <u>Canady</u>, 460 S.E.2d at 688 n.16). Therefore, Magistrate

Judge Aloi did not act contrary to the law by declining to apply

the <u>Hearn</u> test in this case.[5]

Rather, the better test was articulated by the Second Circuit

in <u>Erie</u>. The court there was critical of <u>Hearn</u> and its application

by the district court below. More particularly, it found fault with

the fact that <u>Hearn</u> appears to make a communication "at issue"

simply because it is relevant to the lawsuit. <u>Erie</u>, 546 F.3d at

229. The Second Circuit instead reasoned that, in order to make

privileged information "at issue" and implicitly waived, "a party

must <u>rely</u> on privileged advice from his counsel to make his claim

or defense." <u>Id.</u> (emphasis in original). This holding is consistent

with West Virginia's discussion of waiver, and Magistrate Judge

Aloi was correct to apply it. <u>See</u> <u>Carter</u>, 689 S.E.2d at 805

(quoting <u>Canady</u>, 460 S.E.2d at 688 n.16) ("[A]n attorney's legal

---

[5] Even if the Court were to apply the <u>Hearn</u> test, Bowles
Rice's argument falters on the third requirement because it cannot
establish that the privileged communications it seeks are "vital"
to its defense. Rather, Bowles Rice has "access to witnesses other
than plaintiff's attorney's who can shed light on the reasons for
the settlement, and to experts who could opine on the
reasonableness of the settlement." <u>Eriksen</u>, 2007 WL 188881, at *3.
Indeed, First American itself intends to rely on its employees, as
well as pleadings and discovery from the underlying cases, not the
advice of its attorneys (Dkt. No. 109 at 7). That the privileged
communications are relevant and may be helpful to Bowles Rice does
not necessarily mean that they are "vital." <u>See</u> <u>Eriksen</u>, 2007 WL
188881, at *3.

advice only 'becomes an issue where a client takes affirmative action to assert a [claim or] defense and attempts to prove that [claim or] defense by disclosing or describing an attorney's communication.'").

Here, First American is not relying on the advice of counsel to establish that its settlement was reasonable, nor does West Virginia law require that it do so. To the contrary, First American has expressly stated its intention to rely solely on the objective factors set forth by the Supreme Court of Appeals in Valloric. Given that it need not present subjective evidence, First American did not impliedly waive its attorney-client privilege by the mere filing of this indemnification lawsuit. Accord AngioDynamics, Inc. v. Biolitec, Inc., No. 1:08-CV-004, 2010 WL 11541926 (N.D.N.Y. May 25, 2010) (holding that merely filing an indemnification action does not constitute a waiver of the attorney-client privilege). Likewise, because First American is not relying on its state of mind to prove that the underlying settlement was reasonable, denying access to privileged material is not unfair, as Bowles Rice argues. See Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP, 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010).

In addition, Bowles Rice attempts to establish that it can satisfy the Erie test, but only by mischaracterizing the test's

proper application. This misconception of the _Erie_ test is belied by Bowles Rice's reliance on _Bacchi v. Massachusetts Mutual Life Insurance Co._, 110 F. Supp. 3d 270, 276 (D. Mass 2015). In _Bacchi_, the defendant pleaded affirmative defenses of good faith and regulatory approval. _Id._ at 275. As a result, the plaintiff claimed that the defendant had placed its legal advice at issue and impliedly waived attorney-client privilege. _Id._ The district court reasoned that "it is not necessary for purposes" of proving reliance under _Erie_ "to show that the defendant has stated an intent to introduce" attorney communications. "Rather, it is sufficient if the defendant's defense relies on certain facts that can only be tested or rebutted if the adversary is given access to privileged material." _Id._ at 276.

Here, Bowles Rice places itself in the position of the defendant in _Bacchi_, arguing that its defense relies on facts that can only be tested with access to First American's privileged communications (Dkt. No. 73 at 9-10). But this argument gets _Erie_ backwards by contending that one party can impliedly waive its opponent's attorney-client privilege by determining that it must rely on privileged material to establish its own defense. As discussed, both West Virginia law and _Erie_ are clear that a party impliedly waives the privilege only through its own reliance on the

advice of counsel; the straightforward application of that test to the facts of this case leads to the conclusion that First American has not done so. Therefore, Magistrate Judge Aloi did not clearly err or act contrary to law when he ruled that First American's attorney-client privilege has not been impliedly waived.

## C.    First American Need Not Produce a Further Privilege Log.

Finally, Bowles Rice argues that, even if First American did not impliedly waive the attorney-client privilege, Magistrate Judge Aloi erred by not requiring First American to submit a privilege log for events occurring after July 29, 2014, when First American retained outside counsel in the underlying actions (Dkt. No. 103 at 4). First American, on the other hand, asserts that the documents are admittedly and unquestionably privileged, making a privilege log unnecessary and unduly burdensome (Dkt. No. 109 at 8-10).

The proponent of the attorney-client privilege usually bears the burden of describing "otherwise discoverable" privileged material such that other parties will be able to assess the claim. Fed. R. Civ. P. 26(b)(5). The Local Rules also set out requirements for what a privilege log must include. L.R. Civ. P. 26.04(a)(2). "The purpose of the privilege log is to provide information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligible determination about the

validity of the assertion of the privilege." <u>Sheets v. Caliber Home Loans, Inc.</u>, No. 3:15-CV-72, 2015 WL 7756156, at *3 (N.D.W.Va. Dec. 1, 2015) (internal quotation and citation omitted).

Here, however, Bowles Rice has conceded that requests for production of First American's communications with attorneys and representatives in the underlying lawsuits were meant to identify privileged information (Dkt. No. 109-5 at 7). It intended to argue that First American had impliedly waived any claim of privilege by filing this lawsuit. <u>Id.</u> Because the Court has ruled that First American did not impliedly waive the attorney-client privilege when it filed this lawsuit, it would be futile to require that First American provide a privilege log for clearly privileged communications. <u>Accord</u> <u>Ryan Inv. Corp. v. Pedregal de Cabo San Lucas</u>, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) (denying motion to compel "log of post-litigation counsel communications and work product" because they are "presumptively privileged"); <u>Frye v. Dan Ryan Builders, Inc.</u>, 2011 WL 666326, at *7 (N.D.W.Va. Feb. 11, 2011) (reasoning that party did not have to produce a privilege log for its litigation file). Therefore, Magsitrate Judge Aloi did not err when he denied Bowles Rice's request for such a log.

Nonetheless, as discussed at the status conference on November 20, 2017, to the extent that First American has failed to provide

**MEMORANDUM OPINION AND ORDER**
**OVERRULING DEFENDANT'S OBJECTIONS [DKT. NO. 103]**

Bowles Rice with a privilege log for withheld internal documents generated after July 2014 and not related to the Court's ruling on attorney-client privilege - such as the claim file or claim log - First American is **ORDERED** to do so now.

## V. CONCLUSION

For the reasons discussed, the Court **OVERRULES** Bowles Rice's objections to the Magistrate Judge Aloi's October 23, 2017, ruling on its motions to compel (Dkt. No. 103).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: December 11, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE