IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FIRST AMERICAN TITLE INSURANCE CO.,**

    **Plaintiff,**

**v.**                                       **CIVIL ACTION NO. 1:16cv219**
                                                 **(Judge Keeley)**

**BOWLES RICE, LLP,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO EXCLUDE PLAINTIFF'S REBUTTAL EXPERT [DKT. NO. 116]**

Pending is the Motion to Exclude Plaintiff's Rebuttal Witness filed by the defendant, Bowles Rice, LLP ("Bowles Rice"). For the reasons stated on the record during the December 20, 2017, status conference, as well as those that follow, the Court **GRANTS** the motion (Dkt. No. 116).

### I. BACKGROUND

This case arises out of a $775 million title insurance policy issued by Bowles Rice as an agent of the plaintiff, First American Title Insurance Co. ("First American"). The policy became effective on March 9, 2007, and insured the priority of a credit line deed of trust related to the construction of a coal-fired power plant by Longview Power, LLC ("Longview"). In 2012, Longview's contractors filed mechanic's lien claims in excess of $335 million, which asserted priority over the credit line deed of trust. After initially contesting the legitimacy of coverage claims under its title insurance policy, First American ultimately settled its

alleged liability to the title insurance policyholder, Union Bank of California, N.A. ("Union Bank"), for $41 million.[1]

First American seeks indemnification from Bowles Rice pursuant to the parties' agency relationship. It alleges, in part, that Bowles Rice breached the relevant agency agreement by failing to inform First American that Longview's contractors had commenced construction before the credit line deed of trust was recorded. In both the underlying litigation and the instant lawsuit, however, the validity, priority, and enforceability of the contractors' mechanic's liens has remained a contested issue.

During October and November 2017, the parties filed expert disclosures pursuant to the deadlines in the Court's Scheduling Order (Dkt. No. 25 at 2). On October 2, 2017, First American disclosed as its expert an attorney named Robert T. Edwards ("Edwards") (Dkt. No. 116-1). Edwards' opinions focus primarily on whether Bowles Rice breached the parties' agency agreements when it issued the title insurance policy for the Longview project. Among others, Edwards opines that Bowles Rice breached the agreements by 1) failing to notify First American that construction had commenced

---

[1] A more detailed summary of the factual background of this case can be found in the Court's Memorandum Opinion and Order Overruling Defendant's Objections, which was filed on December 11, 2017 (Dkt. No. 128).

on the project, 2) failing to exercise due diligence and reasonable care by inspecting the subject property, 3) failing to obtain approval to issue a policy in excess of $500,000, and 4) failing to obtain approval to insure against the special risk of mechanic's liens. Id. at 6-7.

On October 21, 2017, Bowles Rice identified two experts. Its first expert, attorney Robert B. Holman ("Holman"), covers a wide variety of subject matter in his report (Dkt. No. 116-2). He concludes that Bowles Rice was authorized to issue the West Virginia policy. Id. at 26-27. He also opines that Bowles Rice properly underwrote risks associated with mechanic's liens by obtaining an Owner's Affidavit and lien waivers prior to closing. Id. at 29-30. Moreover, he contends that, despite the allegation that Bowles Rice failed to tender knowledge of construction, First American itself failed to properly evaluate site work and take precautions with regard to mechanic's lien risks. Id. at 30-31. Finally, he opines that First American should have denied Union Bank's claim, and, further, that it handled the claim in an unreasonable manner by failing to investigate or challenge the validity of the mechanic's liens. Id. at 34-37.

Bowles Rice also disclosed the "preliminary report" of its second expert, attorney Carl L. Fletcher ("Fletcher"). Id. at 42.

In that report, Fletcher opines that "[t]he challenges to the priority and validity of the [mechanic's] liens are . . . well-grounded," and "that had [First American] pursued those issues to their conclusion it is likely to have prevailed on some or all of them." Id. at 44-45.[2]

On November 10, 2017, First American identified attorney Johnson W. Gabhart ("Gabhart") as a rebuttal expert to offer opinions "concerning the enforceability and priority of certain mechanic's liens recorded by contractors working on the Longview Power Plant Project," including "whether the mechanic's liens appear to have been properly perfected and whether they created a security interest that was prior to a credit line deed of trust . . . insured by" First American (Dkt. No. 122-1).

In Gabhart's opinion, activities such as clearing, grubbing, road construction, fencing, berming, and installation of office trailers, all of which took place prior to the recording of the credit line deed of trust, were necessary elements of the contractors' work. Id. at 4. Moreover, he opines that the partial lien waivers obtained by Bowles Rice were conditional and did not

---

[2] First American moved to disqualify Fletcher due to an alleged conflict of interest (Dkt. No. 123), which motion the Court granted on January 3, 2018 (Dkt. No. 138).

cover claims where no payment had been made. Consequently, Gabhart concludes that mechanic's liens for subsequent work could relate back to construction prior to the recording of the deed of trust. Id. He also concludes "that the subject mechanic's liens were properly executed and timely enforced," and that "the mechanic's liens were entitled to priority over the credit line deed of trust securing Union Bank's interest." Finally, he opines "that First American's actions in settling the mechanic's liens and thereby correcting title to the subject property were quite reasonable." Id. at 5.

On November 22, 2017, Bowles Rice moved to exclude Gabhart as an expert, contending that, because First American bears the burden to prove the reasonableness of its settlement, Gabhart's opinion constituted inappropriate rebuttal (Dkt. No. 116 at 1). In response, First American argued that its case "has nothing to do with the actual validity, priority, and enforceability of the mechanic's liens," and that it has offered Gabhart's opinion only in response to an affirmative defense raised by Bowles Rice. Since that opinion is not being offered in support of its prima facie case, First American contends it is an appropriate subject for rebuttal testimony (Dkt. No. 122 at 1-2).

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 26(a)(2)(D), "[a] party must make expert disclosures at the time and in the sequence that the court orders." The Court's Scheduling Order permits rebuttal experts "only if the evidence is intended solely to contradict or rebut evidence on issues not previously identified by another party" (Dkt. No. 25 at 4). As the Court has stated, the purpose of rebuttal is to address new issues that would not have been properly considered during a party's initial expert disclosures (Dkt. No. 99 at 12). The Southern District previously explained:

> A party may not offer testimony under the guise of "rebuttal" only to provide additional support for his case in chief. The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief. . . . Ordinarily, rebuttal evidence may be introduced only to counter new facts presented in the defendant's case in chief. . . . Permissible rebuttal evidence also includes evidence unavailable earlier through no fault of the plaintiff.

Wise v. C.R. Bard, Inc., No. 2:12-cv-01378, 2015 WL 461484, at *2 (S.D.W.Va. Feb. 3, 2015) (internal citation and quotation omitted). An example of appropriate rebuttal evidence is that which responds to an affirmative defense. See id.

If a party fails to make timely disclosures as required above, it may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). To determine within its discretion whether a failure is substantially justified or harmless, the Court "should be guided by":

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003) (internal quotation and citation omitted); see also Wilkins v. Montomery, 751 F.3d 214, 222 (4th Cir. 2014).

### III. LEGAL FRAMEWORK

The propriety of Gabhart's testimony thus depends, in pertinent part, on First American's burden of proof under West Virginia's law of indemnification. West Virginia recognizes both express and implied indemnification. Express indemnity is based on a written agreement and "can provide the person having the benefit of the agreement, the indemnitee, indemnification even though the indemnitee is at fault." Syl. Pt. 1, Valloric v. Dravo Corp., 357

7

S.E.2d 207 (W. Va. 1987). Implied indemnity, on the other hand, arises out of a relationship between the parties. Id.

In Valloric v. Dravo Corp., the Supreme Court of Appeals of West Virginia held that the indemnitee's burden of proof in an indemnification action depends on whether the indemnitor "had actual notice of the underlying claim, an opportunity to defend it, and the right to participate in any settlement negotiations." Id. at 211; see also VanKirk v. Green Construction Co., 466 S.E.2d 782, 789 (W. Va. 1995) ("Our indemnity law is consistent with that of other jurisdictions where courts hold that an indemnitor given reasonable notice by the indemnitee is obligated to assume the defense and, if the indemnitor does not, then it is bound by the judgment."). "Where an indemnitor has not been notified . . . and given an opportunity to participate in the settlement negotiations, then an indemnitee must prove that he was actually liable to the plaintiff." Valloric, 357 S.E.2d 207, Syl. Pt. 3.

On the other hand, "[w]here a party having a duty to indemnify has been notified or been made a party to the underlying proceedings and given an opportunity to participate in its settlement negotiations . . . the defendant-indemnitee should not be required to prove" that it was actually liable "to recover the amount paid in the settlement." Id., 357 S.E.2d 207, Syl. Pt. 2.

Rather, "[u]nder a potential liability standard, the indemnitee must in his indemnity suit show that the original claim is covered by the indemnity agreement. Then he must demonstrate that he was exposed to liability which could reasonably be expected to lead to an adverse judgment. Finally, he must prove that the amount of the settlement was reasonable." Id., 357 S.E.2d 207, Syl. Pt. 4. "The focus must remain on what was a reasonable judgment in light of the circumstances at the time the settlement was made." Id. at 213.

Valloric cited with approval the following reasoning from Trim v. Clark Equipment Co., 274 N.W.2d 33, 36-37 (Mich. App. 1979) (internal quotation and citation omitted):

> Potential liability actual means nothing more than that the indemnitee acted reasonably in settling the underlying suit. The reasonableness of the settlement consists of two components which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle. The fact that the claim may have been successfully defended by a showing of contributory negligence, lack of negligence or otherwise, is but a part of the reasonableness analysis and, therefore, subject to proof.

Valloric, 357 S.E.2d at 214.[3]

## IV. DISCUSSION

As noted, First American's burden of proof with regard to indemnification depends on whether it provided adequate notice to Bowles Rice. Whether or not the notice was sufficient, under either an actual liability or potential liability standard, Gabhart's testimony is "germane to [First American's] prima facie case" and thus constitutes inappropriate rebuttal evidence. Wise, No. 2:12-cv-01378, 2015 WL 461484, at *2. Moreover, First American's failure to disclose Gabhart in a timely manner was neither substantially justified nor harmless.

### A. Actual Liability

The parties dispute whether two particular letters from First American to Bowles Rice constitute the notice contemplated by Valloric. The first letter was mailed on May 6, 2014, from First American's Senior Claims Counsel, Brian Barlow ("Barlow"), to Chud Dollison ("Dollison"), the title agent and partner at Bowles Rice

---

[3] In another portion of the Trim opinion not quoted in Valloric, the court stated that, "[i]f it is shown that this suit would have been successfully defended, the indemnitee will not recover. The burden of presenting evidence on this point is on the indemnitor, but the ultimate burden of persuasion remains with the indemnitee to show that the settlement was reasonable under all the circumstances." Trim, 274 N.W.2d at 37.

10

who signed the title insurance policy at issue (Dkt. No. 129-1). The letter summarizes Union Bank's claim, including the fact that the contractors' mechanic's liens asserted priority over the credit line deed of trust. Barlow also advised Dollison as follows:

> The lien priority issues have proceeded to mediation in the Bankruptcy Court. Based on the information available to date, your firm should put its liability insurance carrier on notice of this claim if it has not already done so. Please confirm in writing that you have put your liability insurance carrier on notice of this claim.

Id. On May 21, 2014, Dollison sent an email confirming that he had placed Bowles Rice's carrier on notice (Dkt. No. 129-3 at 1).

The second letter from Barlow to Dollison is dated July 14, 2014. In it Barlow noted that "[t]o date, I have not been contacted by any representative of the insurance carrier regarding the investigation of [the] claim. Nor, despite knowledge of the ongoing litigation, has the insurance carrier involved itself in this matter." Id. The letter also stated that First American was proceeding with settlement negotiations, and possibly might settle the case in the absence of "communication or objections" from either Bowles Rice or its carrier. Id.

Whether these letters constitute sufficient notice under Valloric is too fact-bound a question to warrant determination at this stage of the litigation. The notice requirement contemplates

11

"an opportunity to defend," Valloric, 357 S.E.2d at 211, which is commensurate with an indemnitee's duty to provide "reasonable notice." VanKirk, 466 S.E.2d at 789. Disputed questions regarding notice, including its reasonableness under the circumstances, are reserved for the trier of fact under West Virginia law. See, e.g., Syl. Pt. 1, Dairyland Ins. Co. v. Voshel, 428 S.E.2d 542 (W. Va. 1993) (holding that the reasonableness of notice provided to an insurer "ordinarily becomes a question of fact for the fact finder to decide"); Johnson v. Inter-Ocean Cas. Co., 164 S.E. 411, 412 (W. Va. 1932) (referring to "proper notice" as a question of fact). Of course, the evidence in this case may ultimately warrant only one reasonable inference, see Ferguson v. Upper Chesapeake Med. Servs., Inc., 91 F.3d 130 (4th Cir. 1996) (Table), but such a decision should be made on a fully developed record.

Should the trier of fact conclude that First American failed to provide sufficient notice to Bowles Rice, First American then would be required to prove that it was actually liable to pay Union Bank's claim. Valloric, 357 S.E.2d 207, Syl. Pt. 3. To establish actual liability, First American would have to present evidence that Union Bank's claim was covered and had merit based on the validity, enforceability, and priority of the mechanic's liens. Because First American may be required to present evidence

regarding the validity of the mechanic's liens as part of its prima facie case on actual liability, it would be improper for it to offer Gabhart's testimony in rebuttal. See Wise, No. 2:12-cv-01378, 2015 WL 461484, at *2.[4]

**B. Potential Liability**

If the trier of fact concludes that Bowles Rice did receive the notice contemplated by Valloric, First American then must only prove that it was potentially liable. Valloric, 357 S.E.2d 207, Syl. Pts. 2, 4. The parties hotly dispute whether the validity of the mechanic's liens is an element of First American's prima facie case on potential liability, or an affirmative defense raised by Bowles Rice (Dkt. Nos. 116 at 8 n.1; 122 at 6-7).

Contesting an issue on which the plaintiff bears the burden of proof is necessarily distinct from asserting an affirmative defense. See Wise, No. 2:12-cv-01378, 2015 WL 461484, at *2. "A defense which demonstrates that plaintiff has not met its burden of

---

[4] The notice requirements themselves cannot be characterized as an affirmative defense, given that the Supreme Court of Appeals has referred to them as "prerequisites for an indemnitee to have the benefit of the potential liability standard along with the further element that the settlement amount must be deemed to be reasonable in view of the potential liability." Valloric, 357 S.E.2d at 211 (emphasis added). Thus, First American may only utilize the potential liability standard if it proves that notice was sufficient. See id., 357 S.E.2d 207, Syl. Pt. 2.

13

proof is not an affirmative defense." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002). "Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true." Hartford Underwriters Ins. Co. v. Kraus USA, Inc., 313 F.R.D. 572, 575 (N.D. Cal. 2016) (quoting G&G Closed Circuit Events, LLC v. Nguyen, No. 10-168, 2010 WL 3749284, at *5 (N.D. Cal. Sept. 23, 2010)).

In the context of this case, the alleged invalidity of the mechanic's liens is not an affirmative defense raised by Bowles Rice. While Valloric suggests that an indemnitor should be given an opportunity to prove that the indemnitee was not liable in the underlying case,[5] it never shifts the burden of proving reasonableness away from the plaintiff indemnitee. Rather, the validity of a settlement under the potential liability standard

---

[5] See, e.g., Valloric, 357 S.E.2d at 212 ("[E]quitable considerations require that the third-party defendant have a reasonable opportunity to show that the third-party plaintiff was not liable to the original plaintiff but paid the claim as a volunteer."); id. at 214 (quoting Trim, 274 N.W.2d at 36-37) ("The fact that the claim may have been successfully defended by a showing of contributory negligence, lack of negligence or otherwise, is but a part of the reasonableness analysis and, therefore, subject to proof."); see also Trim, 274 N.W.2d at 37 ("The burden of presenting evidence on this point is on the indemnitor . . . .").

turns on whether 1) First American "was exposed to liability which could reasonably be expected to lead to an adverse judgment," and 2) "the amount of the settlement was reasonable." Valloric, 357 S.E.2d at 214. "The reasonableness of the settlement" depends on "the amount paid in settlement of the claim in light of the risk of exposure," which is measured by "the probable amount of a judgment if the original plaintiff were to prevail at trial, <u>balanced against the possibility that the original plaintiff would have prevailed</u>." Id. (quoting Trim, 274 N.W.2d at 36-37) (emphasis added). In order to prove reasonableness, First American has the burden to establish the possibility that the mechanic's liens were valid, enforceable, and entitled to priority over Union Bank's credit line deed of trust.

Gabhart's opinion addresses the validity of the mechanic's liens in order to establish the reasonableness of First American's settlement under the potential liability standard. This is a matter on which First American bears the burden of proof. And, as Gabhart's opinions do not confront "new facts" or "previously unavailable evidence" presented by Bowles Rice regarding First American's potential liability, they have been improperly offered as rebuttal testimony. See Wise, No. 2:12-cv-01378, 2015 WL 461484, at *2.

## C.  Substantially Justified or Harmless

Because First American improperly disclosed Gabhart's report in rebuttal rather than in its case in chief, Fed. R. Civ. P. 37(c)(1) directs the automatic exclusion of his testimony. The Court must exclude Gabhart's testimony unless the untimely disclosure was "substantially justified or harmless" under the factors outlined in Southern States, 318 F.3d at 596-97. First American failed entirely to address these factors in its opposition brief. And because most of the factors weigh in favor of striking Gabhart's testimony, the Court finds that First American's failure to disclose him in its case in chief was neither substantially justified nor harmless.

As to the first factor, Bowles Rice states that it was "quite surprised" when First American disclosed Gabhart as a rebuttal expert on the validity, priority, and enforceability of the mechanic's liens (Dkt. No. 116 at 10-11), given First American's burden of proving its potential liability, not only that it settled the claim for a fraction of the alleged liability. Valloric, 357 S.E.2d at 214. The second factor, whether Bowles Rice can cure the surprise, Southern States, 318 F.3d at 596-97, weighs against striking Gabhart. Bowles Rice has already disclosed experts on the mechanic's lien issues and has ample time to take Gabhart's

16

deposition. The third factor, however, weighs against First American. Allowing Gabhart's testimony would disrupt the trial because his opinions affect Bowles Rice's presentation of evidence. See id. Had Gabhart's opinions been disclosed properly pursuant to the Court's Scheduling Order, Bowles Rice's expert could have considered them in forming his opinions concerning the mechanic's liens. Because Gabhart was disclosed as a rebuttal expert, Bowles Rice had no opportunity to respond to his opinions in its expert disclosures.

With regard to the fourth factor, the importance of the evidence, First American's position in this litigation supports the conclusion that Gabhart's testimony is not necessary to its case in chief. See id. First American has consistently maintained that it will establish the reasonableness of its settlement through the "balance between settlement amount . . . and the potential judgment amount" (Dkt. No. 58 at 13-14). It has also stated its intent to rely on "employees who evaluated the claims and coverage defenses" (Dkt. No. 109 at 7), and never suggested that it would rely on expert testimony until it disclosed Gabhart in rebuttal.

Finally, as to the fifth factor, First American has not provided any reason, much less a compelling one, for its late disclosure. Southern States, 318 F.3d at 596-97. It argues only

that Gabhart is an appropriate rebuttal expert. But "mere labeling of [Gabhart] as a 'rebuttal' expert is not a sufficient explanation for . . . untimely disclosure." Wise, No. 2:12-cv-01378, 2015 WL 461484, at *4.

## V. CONCLUSION

After considering the factors outlined by the Fourth Circuit in Southern States, the Court concludes that First American's failure to timely disclose Gabhart was neither substantially justified nor harmless. It therefore **GRANTS** Bowles Rice's Motion to Exclude Plaintiff's Rebuttal Expert (Dkt. No. 116) and excludes that testimony pursuant to Fed. R. Civ. P. 37(c)(1).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: January 5, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE